UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN T. SCULL,

                                Plaintiff,

v.

PATRICK K. HENNEGAN,
ROGER TREVINO,
JOHN P. BARTOLOMEI,
BRIAN DEL PORTO,
NIAGARA FALLS REDEVELOPMENT LLC,
11TH STREET PROPERTIES LLC,
CLARKSVILLE LAND COMPANY LLC,
HOWARD MILSTEIN (Owner NFR),
ANTHONY BERGAMO (President NFR),
CITY OF NIAGARA FALLS NEW YORK,
THOMAS G. EWING,
                            Defendants.
_____

**REPORT AND
RECOMMENDATION**

15-CV-00309-RJA-JJM

      Plaintiff commenced this 42 U.S.C. §1983 action *pro se*, alleging constitutional

and state law violations arising from the alleged theft of an 8' x 12' fiberglass bulldog kiosk.

Before the court are defendants' motions for summary judgment [127, 129, 130][1] and plaintiff's

motion for leave to supplement the Amended Complaint [142], which have been referred to me

by District Judge Richard J. Arcara for initial consideration [8].  Having reviewed the parties'

submissions [127, 129, 130, 134-143, 145-51], I recommend that the NFR defendants' motion

---

[1]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[130]² be granted, that the motions of defendant John Bartolomei [129]³ and the City of Niagara Falls defendants [127]⁴ be granted in part and denied in part, and that plaintiff's motion be denied.

## BACKGROUND

In August 2005, defendant Roger Trevino, on behalf of defendant 11th Street Properties LLC ("11th Street"), purchased a "fully equipped and operational 'Bulldog Coffee Center'" ("bulldog kiosk") and two parcels of land (1306 and 1308 Falls Street) from plaintiff. NFR defendants' Statement of Undisputed Facts [130-2], ¶1.⁵ Pursuant to their contract, the bulldog kiosk was to have been delivered by May 15, 2006.  [130-7], p. 1 of 9 (CM/ECF). However, defendant Trevino, an executive of defendants Niagara Falls Redevelopment, LLC

---

²     The "NFR defendants" collectively refers to Niagara Falls Redevelopment LLC, 11th Street Properties LLC, Clarksville Land Company LLC, Howard Milstein and Roger Trevino.

³     Plaintiff's Fifth and Sixth Amendment and state law conspiracy claims against defendant Bartolomei were previously dismissed. *See* Scull v. Hennegan, 2016 WL 3365328, *4 (W.D.N.Y.), adopted, 2016 WL 3349327 (W.D.N.Y. 2016); Scull v. Hennegan, 2017 WL 2374496, *7 (W.D.N.Y.), adopted, 2017 WL 2362395 (W.D.N.Y. 2017).

⁴     The "City of Niagara Falls defendants" collectively refers to the City of Niagara Falls, Patrick Hennegan, Thomas Ewing, and Bryan Dalporto, who is incorrectly identified in the Amended Complaint as "Brian Del Porto". *See* Dalporto Declaration [127-4], p. 1 of 2 (CM/ECF).

⁵     As argued by the NFR defendants, plaintiff failed to respond to their Statement of Undisputed Facts.  Horn Reply Declaration [141], ¶¶6-7.  The same holds true as to the other defendants. Although this failure "does not relieve the party seeking summary judgment of the burden of establishing that it is entitled to judgment as a matter of law", Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir.2001), I will accept defendants' statements of undisputed material facts as true, where supported by admissible evidence.  *See* L.R. Civ. P. 56(a)(2).

("NFR"), 11th Street, and Clarksville Land Company, LLC ("Clarksville"), states that plaintiff never delivered the bulldog kiosk to 11th Street. Trevino Declaration [130-6], ¶5.

Plaintiff testified that he parked the bulldog kiosk on a lot near his home while he was waiting to hear from defendant John Bartolomei, the attorney for 11th Street at the time of the transaction, about where to take it, but "it just sat there and sat there". Plaintiff's August 19, 2016 deposition transcript [130-5], pp. 56-57 (transcript pagination); Trevino Affidavit [129-4], ¶¶3-4. Plaintiff states that in 2006, a windstorm destroyed the bulldog kiosk that belonged to 11th Street, and that he relayed this information to defendant Bartolomei. Amended Complaint [31], p. 28 of 71 (CM/ECF).[6] He states that the bulldog kiosk purchased by 11th Street and destroyed in the windstorm was made of foam and wood, but that he also owned a replica of that kiosk, which was made from fiberglass. Plaintiff's response [138], p. 6 of 19 (CM/ECF), ¶10. The existence of two bulldog kiosks is supported by defendant Bartolomei's June 24, 2005 letter to plaintiff, in which 11th Street offered to buy two "Bulldog Coffee Centers" - one fully operational and the other a completed shell from plaintiff. [129-7], p. 5 of 13 (CM/ECF). However, defendant Trevino denies having personal knowledge as to whether plaintiff constructed a second bulldog kiosk. Trevino Declaration [130-6], ¶5. He also denies having personal knowledge as to whether the bulldog kiosk was destroyed in 2006. Id.

On June 19, 2012, approximately six years after the alleged destruction of the bulldog kiosk, defendant Trevino contacted the City of Niagara Falls Police Department upon

---

[6] Plaintiff swears to the truth of the allegations in the Amended Complaint. [31], pp. 18-19 of 71 (CM/ECF).

learning that plaintiff's trailer containing a bulldog kiosk was illegally parked on Clarkville's property. NFR defendants' Statement of Undisputed Facts [130-2], ¶5. Defendant Trevino explained to defendant Patrick Hennegan, a City of Niagara Falls Police Officer, that the bulldog kiosk on the trailer was purchased by 11th Street years earlier. Id., ¶6. In doing so he relied upon the 2005 contract for its purchase. Id., ¶7.[7] Defendant Hennegan issued plaintiff a parking ticket and advised defendant Trevino that because plaintiff's trailer was parked on private property, it was up to the property owner to remove the property. Id., ¶8.

Defendant Trevino arranged with George Satarian, a tow truck operator, to have the trailer towed to his property and the bulldog kiosk taken to a warehouse owned by 11th Street. Id., ¶9. Plaintiff states that when he contacted the City of Niagara Falls Police Department on June 21, 2012 to report the theft of his trailer and its contents, he was informed that his trailer was located at Satarian Towing. Amended Complaint [31], p. 52 of 71 (CM/ECF). Satarian Towing informed him that he could come to pick up his trailer, but that the bulldog kiosk had been taken by NFR to a different location. Id.[8] This prompted plaintiff to call the Niagara Falls Police, and Officer Warme told him that it was a civil matter. Id., pp. 24, 38-39 of 71.

---

[7]    Defendant Hennegan's report states that defendant Trevino had "valid documentation as proof of ownership of said statute". Amended Complaint [31], p. 31 of 71 (CM/ECF). However, defendant Hennegan's Declaration [127-2] does not state what proof of ownership, if any, was provided to him.

[8]    Plaintiff argues that defendant Trevino told George Satarian that the bulldog kiosk he purchased was destroyed. Plaintiff's Response [138], p. 14 of 19 (CM/ECF). In support of that argument he appears to rely on an unsigned Supporting Deposition ([150], p. 28 of 42 (CM/ECF)), in which Mr. Satarian stated that "Mr Trevino told me that he had bought this bull dog some time ago, but it had disappeared and John Scull told him it had blown away". Even if I were to consider the Supporting Deposition, it fails to establish that defendant Trevino knew that the bulldog kiosk he took possession of was not his.

In February 2013, plaintiff met with defendant Thomas Ewing, a Detective with the Niagara Falls Police Department, who took no action to investigate his claims. Id., pp. 24-25, 51-56 of 71. On July 29, 2013, plaintiff sent a Freedom of Information Law request to defendant Bryan Dalporto, the City of Niagara Falls Police Chief, concerning the incident, which was accompanied by a 13-page letter complaining of defendant Hennegan's conduct. Id., pp. 25, 60 of 71. On November 22, 2013, Carlton Cain, a Deputy Superintendent of Internal Affairs with the City of Niagara Falls Police Department, informed plaintiff that his complaint against defendant Hennegan was unfounded and that there was "insufficient information to continue [its] investigation". [31-1], p. 3 of 42 (CM/ECF).

On June 21, 2012, plaintiff wrote to defendant Bartolomei about the alleged theft of his bulldog kiosk [129-5]. Defendants Bartolomei and Trevino spoke about that letter on June 24, 2012. Bartolomei Affirmation [129-13], ¶66. Although defendant Bartolomei no longer represented 11th Street, they agreed that he would respond to plaintiff because the letter was addressed to him and plaintiff was an old friend. Bartolomei Affirmation [129-13], ¶¶66, 72; NFR defendants' Statement of Undisputed Facts [130-2], ¶12. In defendant Bartolomei's June 25, 2012 responding letter, he denied any recollection of having a conversation with plaintiff in 2005[9] concerning the destruction of the statute, and requested that plaintiff provide some proof of his claim [129-6].

As a result of these events, plaintiff asserts the following eleven claims:

---

[9]    In plaintiff's letter to defendant Bartolomei he stated that the bulldog kiosk was destroyed in the "Big Storm" of 2005 or 2006. [31-1], p. 14 of 42 (CM/ECF).

-- Against defendant Hennegan, for granting defendant Trevino permission to take his bulldog kiosk in contravention to his due process rights, in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments, as well as state seizure laws (First Claim);

-- Against defendant Ewing, for refusing to "correct the situation", notwithstanding his knowledge that New York seizure laws had been violated, in violation of the First, Fifth and Fourteenth Amendments (Second Claim);

-- Against defendant Dalporto, for "intentionally covering up the actions of [defendants Hennegan and Ewing]" (Third Claim);

-- Against defendant City of Niagara Falls, for the conduct of defendants Hennegan, Ewing, and Dalporto (Eleventh Claim);

-- Against defendant Trevino, for conspiring with defendant Hennegan and others to steal the bulldog kiosk, in violation of the Fifth, Sixth and Fourteen Amendments (Fourth Claim); and

-- Against defendants Bartolomei,  11th Street, NFR, Clarksvillle, and Howard Milstein, for participating in the conspiracy (Fifth - Tenth Claims).[10]

Defendant Trevino denies ever speaking with anyone, including his co-defendants in this lawsuit, about a plan to deprive plaintiff of his property or any other right.  Trevino Declaration [130-6], ¶10.  Despite having the opportunity to depose defendant Trevino, as well

---

[10]     The claim against defendant Anthony Bergamo, who died during the pendency of this action, was previously dismissed. *See* January 24, 2018 Report and Recommendation [101], adopted, March 21, 2018 Decision and Order [104].

as the other defendants, plaintiff did not do so.  NFR defendants' Memorandum of Law [130-8], p. 3.

The current motions for summary judgment [127, 129, 130] were filed following the conclusion of fact discovery. [11] After defendants' motions for summary judgment were fully briefed, plaintiff moved for leave to supplement the Amended Complaint [142].


## ANALYSIS

### A.  Defendants' Motions for Summary Judgment

#### 1.  Summary Judgment Standard

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably

---

[11]    The current motions for summary judgment were preceded by the following two motions for summary judgment, which were filed before the close of discovery: 1) Defendant Bartolomei's motion for summary judgment, which was granted to the extent that it sought dismissal of any state law conspiracy claim, but otherwise denied, without prejudice. Scull v. Hennegan, 2017 WL 2374496, *1 (W.D.N.Y.), adopted, 2017 WL 2362395 (W.D.N.Y. 2017); and 2) Plaintiff's motion for partial summary judgment on the issue of ownership of the bulldog kiosk, which was denied. Scull v. Hennegan, 2018 WL 5724238 (W.D.N.Y.), adopted, 2018 WL 5722796 (W.D.N.Y. 2018).

support the jury's verdict for the non-moving party." <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir. 2003).

### 2. NFR Defendants' Motion for Summary Judgment

#### a. Defendant Trevino

"In the context of a civil rights conspiracy claim, to survive a motion for summary judgment, the non-moving party's evidence of a § 1983 conspiracy must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." <u>Ivery v. Baldauf</u>, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018). *See* <u>D'Agostino v. New York State Liquor Authority</u>, 913 F. Supp. 757, 770 (W.D.N.Y.), <u>aff'd,</u> 104 F.3d 351 (2d Cir. 1996) ("[t]o establish § 1983 liability based upon an alleged conspiracy with a public official, then, there must be some evidence, circumstantial or direct, upon which the jury could infer that the private party and the state actor had a 'meeting of the minds' and thus reached an understanding that the plaintiff should be deprived of some right").

Defendant Trevino plausibly demonstrates that he had a good-faith basis for believing that the bulldog kiosk belonged to him, and denies that he came to an agreement with defendant Hennegan - or any other defendant - to violate plaintiff's rights. Trevino Declaration [130-6], ¶10.  Notwithstanding having had a full opportunity to conduct discovery, plaintiff fails to offer any direct or circumstantial evidence to rebut defendant Trevino's showing.  This is fatal to his claim.  *See* <u>Ivery</u>, 284 F. Supp. 3d at 440 ("[i]n the absence of any evidence of agreement, summary judgment on a § 1983 conspiracy claim is warranted"); <u>Lichtenthal v. County of Erie</u>,

2009 WL 2950240, *5 (W.D.N.Y. 2009) (granting summary judgment where the "plaintiff has

not presented any evidence or basis upon which a trier of fact could conclude that any collusion

or agreement existed . . .  to violate [the plaintiff's] constitutional rights"); Webb v. Goord, 340

F.3d 105, 110 (2d Cir. 2003) (the plaintiff "must provide some factual basis supporting a meeting

of the minds, such that defendants entered into an agreement, express or tacit, to achieve the

unlawful end").

      I agree with plaintiff that it is curious that in the six-year interval between the

time the bulldog kiosk was to be delivered and when defendant Trevino located it in June 2012,

defendant Trevino appears to have taken no action to obtain the bulldog kiosk.  Plaintiff's

response [138], p. 13 of 19 (CM/ECF).   However, standing alone, that curiosity fails to create a

triable issue of fact as to whether defendants Trevino and Hennegan had a meeting of the minds

to take the bulldog kiosk in violation of plaintiff's rights.   Therefore, I recommend that the

claims against defendant Trevino be dismissed.


### b.  The Remaining NFR Defendants

      "To succeed on a § 1983 action rooted in conspiracy, a plaintiff must prove an

agreement between at least one state actor and at least one private party to act in concert to

violate constitutional rights." Ruhlmann v. Ulster City Department of Social Services, 234 F.

Supp. 2d 140, 167 (N.D.N.Y. 2002).   Here, defendant Trevino is the only defendant who is

alleged to have conspired directly with a state actor.  Although "[i]t is not necessary that . . .

each coconspirator deal directly with the state actor", Jackson v. Faber, 834 F. Supp. 471, 477

(D. Me. 1993), in the absence of an agreement between at least one private party and a state

actor, plaintiff's claims against the NFR defendants fail.  Therefore, I recommend that the claims

against the remaining NFR defendants[12]  be dismissed.

### 3.    The City of Niagara Falls Defendants' Motion for Summary Judgment

#### a.  Defendants Hennegan, Ewing and Dalporto

Characterizing plaintiff's claim against them as "alleging a violation of his

constitutional rights because the Police did not arrest Roger Trevino" (City of Niagara

defendants' Memorandum of Law [127-7], p. 3 of 4 (CM/ECF)), defendants' lone argument in

support of their motion for summary judgment is that since "the decision to file criminal charges

is discretionary", their conduct is protected by qualified immunity.  Id.

"Qualified immunity attaches when an official's conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

White v. Pauly, __ U.S.__, 137 S. Ct. 548, 551 (2017). The "dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted". Saucier v. Katz, 533 U.S. 194, 202 (2001).

To the extent that the claim against defendants Ewing and Dalporto (Amended

Complaint [31], pp. 11, 13 of 71 (CM/ECF), Claims Two and Four) is for their failure to arrest

---

[12]        Based on this recommendation, I have not addressed the NFR defendants' alternative grounds for
summary judgment.  See NFR defendants' Memorandum of Law  [130-8], pp. 11-14. In any event,
plaintiff's state law conspiracy claim (if any), as well as his Fifth and Sixth Amendment claims, would
fail for the same reasons as set forth in my April 26, 2016 and May 4, 2017 Reports and
Recommendations.  Scull v. Hennegan, 2016 WL 3365328, *4 (W.D.N.Y.), adopted, 2016 WL 3349327
(W.D.N.Y. 2016); Scull v. Hennegan, 2017 WL 2374496, *7 (W.D.N.Y.), adopted, 2017 WL 2362395
(W.D.N.Y. 2017).

defendant Trevino for the alleged theft of the bulldog kiosk, I recommend that it be dismissed because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another". <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 619, (1973).  Since plaintiff "lacks a legally cognizable right to compel the government arrest or prosecute a third party. . . . any argument that Defendants reasonably should have known that their decision to not arrest the alleged perpetrator and not to pursue criminal charges violated a constitutional right enjoyed by Plaintiff necessarily fails." <u>JL v. India Wilea Mitchell</u>, 2016 WL 4582052, *4 (E.D. Va.  2016), <u>aff'd</u>, 677 Fed. App'x 103 (4th Cir. 2017).

However, that is not the entirety of the claim against defendants Ewing and Dalporto, nor is it the claim against defendant Hennegan.  *See* Plaintiff's response [135], pp. 3-5, 17 of 19 (CM/ECF).  Apart from the claim that defendants failed to arrest Trevino, the Complaint also alleges that defendant Hennegan unlawfully granted defendant Trevino permission to take possession of the bulldog kiosk, and that defendants Dalporto and Ewing participated in a coverup of that conduct.  Amended Complaint [31], pp. 11, 13 of 71 (CM/ECF), First, Second and Fourth Claims. While there may be grounds as to why these claims should be dismissed, they have not been put forth by the defendants.[13]  Nor is it "this Court's responsibility to raise and make counsel's arguments for them". <u>Flores v. Tryon</u>, 2017 WL 3705124, *3 n. 4

---

[13]    For the first time in their reply, the City of Niagara Falls defendants argue - without citation to any case or statutory authority - that plaintiff had no Fourth Amendment rights in the trailer and bulldog kiosk, which were abandoned.  However, I will not consider arguments raised for the first time in a reply. *See* <u>Mills v. Luplow</u>, 391 Fed.Appx. 948, 2010 WL 3466805, *2 n. 3 (2d Cir. 2010) (Summary Order).

(W.D.N.Y. 2017). Therefore, I recommend that this portion of the Niagara Falls City defendants'
motion be denied.

### b.  The City of Niagara Falls

The defendant City of Niagara Falls moves for summary judgment on the grounds
that plaintiff fails to establish municipal liability as required by Monell v. Department of Social
Services, 436 U.S. 658, 690-91 (1978).  City of Niagara Falls defendants' Memorandum of Law
[127-7], p. 4 of 4 (CM/ECF).  To establish municipal liability under §1983 a plaintiff "must
prove that action pursuant to official municipal policy caused their injury. . . .  Official municipal
policy includes the decisions of a government's lawmakers, the acts of its policymaking officials,
and practices so persistent and widespread as to practically have the force of law." Connick v.
Thompson, 563 U.S. 51, 60, 60-61 (2011).

Again, they rely on their characterization of plaintiff's claim as arising from their
failure to arrest defendant Trevino:  "Since there is no Constitutional right to have someone
arrested, it is impossible for the City to have implemented a policy infringing on Plaintiff's
rights".  City of Niagara Falls defendants' Memorandum of Law [127-7], p. 4 of 4 (CM/ECF).
However, as discussed above, plaintiff's claims are not so limited.

Defendants also argue that plaintiff fails to "plead any facts related to the
execution of a policy or custom of the City - his sole contentions relate to the actions of
individuals".  Id. However, that argument ignores that a policy can be created by the conduct of
individuals - *i.e.*,  policymaking officials - and there remains a claim against defendant Dalporto,
the Chief of the Niagara Falls police, a potential policymaker. *See* DePrima v. Village of

<u>Catskill</u>, 105 F. Supp. 2d 75, 81 (E.D.N.Y. 2000) ("as chief of police, he is a policymaker with respect to making arrests, and therefore, his conduct can be attributed to the Village"). Again, there may be reasons why defendant City of Niagara Falls is entitled to summary judgment, but it has not, on this record, sufficiently satisfied its burden of demonstrating (legally and factually) that it is entitled to judgment as a matter of law.

### 4.    Defendant Bartolomei's Motion for Summary Judgment

As discussed above, in the absence of an agreement between at least one private party and a state actor, plaintiff's claims against defendant Bartolomei fail, and I recommend that they be dismissed.  *See* <u>Ruhlmann</u>, 234 F.Supp.2d at 167.

Defendant Bartolomei also moves for summary judgment on his counterclaims, which seek compensatory damages for abuse of process, attorney's fees and costs, and punitive damages [34].  Without citing any case law or evidentiary support, defendant Bartolomei seeks summary judgment on his counterclaims by arguing in conclusory fashion that plaintiff's conduct, which "unpleasantly, unnecessarily and excessively burdened [him] for the cost of defense of this action and damaged [his] reputation", constitutes "an abuse of process and a misuse of Lawful Process". Defendant Bartolomei's Memorandum of Law [129-18], p. 9.

He made the same bare bones motion for summary judgment earlier in the case. In recommending that the previous motion be denied, I stated that

> "[s]uch perfunctory arguments fail to meet defendant Bartolomei's burden on summary judgment. *See* <u>Johnson v. Greiner</u>, 2007 WL 2844905, *9 (S.D.N.Y. 2007) ("defendants' failure to make more than boilerplate arguments in their motion papers, compounded by their further

failure to relate those arguments to the factual record in this case, justifies the conclusion that defendants are not entitled to summary judgment"). *See also* United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones")." Scull v. Hennegan, 2017 WL 2374496, *7 (W.D.N.Y. 2017).

That recommendation was adopted, without objection.  2017 WL 2362395 (W.D.N.Y. 2017). For the same reasons, I recommend that defendant Bartolomei's current motion for summary judgment on his counterclaims be denied.


**B.  Plaintiff's Motion for Leave to Supplement the Amended Complaint**

Although captioned as motion for leave to supplement, plaintiff does not attach a proposed Supplemental or Second Amended Complaint.  Instead, he alleges that the 2005 contract for the purchase of the bulldog kiosk that defendant Trevino used to support his claim of ownership was "invalid", and seeks that the "2005 contract be reviewed as to its validity at the time of its presentation to Officer Hennegan and whether Officer Hennegan exceeded the scope of his authority when stated to [defendant] Trevino that he could take possession of the bulldog." Plaintiff's Memorandum of Law [143], pp. 2, 6 of 7 (CM/ECF).

Accepting this as a motion for leave to supplement, plaintiff's motion fails for several reasons. First, it fails to comply with L.R. Civ. P. 15(a), which requires the proposed supplemental or amended pleading to be attached to the motion.   Second, "[a] supplemental complaint is a new complaint consisting of facts arising after the filing of the original complaint".  Pantaleo v. Colt's Patent Fire Arms Mfg. Co., 13 F. Supp. 989, 990 (E.D.N.Y. 1935); Rule 15(d) ("the court . . . may permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be

supplemented"). Since defendant Trevino's use of the 2005 contract as proof of ownership of the bulldog kiosk in 2012 arose before the Amended Complaint and was discoverable throughout the pendency of this case, there is no basis for granting supplementation.

   To the extent that the motion could also be construed as seeking leave to file a Second Amended Complaint pursuant to Rule 15(a), it would also fail. The deadline for seeking that relief expired on August 21, 2017 (Case Management Order [72], ¶5),[14] and plaintiff has not demonstrated "good cause" for why he was unable to discover this information earlier and timely seek to amend the Amended Complaint to include it. *See* Carnrite v. Granada Hospital Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y.1997) (Arcara, J.) ("a party seeking to amend a pleading after the date specified in a scheduling order must first show 'good cause' for the amendment under Rule 16(b); then, if good cause can be shown, the party must demonstrate that the amendment is proper under Rule 15(a)"); Holmes v. Grubman, 568 F.3d 329, 334–35 (2d Cir. 2009) ("[w]here, as here, a scheduling order governs amendments to the complaint . . . the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause").

   In any event, as the NFR defendants argue, this issue is already alleged in the Amended Complaint. *See, e.g.*, [31], p. 14 of 71 (CM/ECF), ¶21 ("Trevino . . . used a mute (*sic*) contract to manipulate a conspiracy to steel (*sic*) the plaintiff's bulldog statue"). Plaintiff had a full opportunity to explore this issue during discovery and to brief it in connection with

---

[14]  That deadline was not extended in the Amended or Second Amended Case Management Orders [91, 100].

defendants' motions for summary judgment.  In fact, it is addressed in plaintiff's opposition to defendants' summary judgment motions.  *See, e.g.*, Plaintiff's response [138], p. 14 of 19 (CM/ECF) ("Officer Hennegan never thought about getting a copy he read a contract that a multimillionaire (*sic*) just gave him and took his word").  Therefore, I recommend that the motion be denied.

## CONCLUSION

For these reasons, I recommend that I recommend that:

-- the City of Niagara Falls defendants' motion for summary judgment [127] be granted to the extent that it seeks dismissal of the claim against defendants Ewing and Dalporto arising from the failure to arrest defendant Trevino for the alleged theft of the bulldog kiosk, but otherwise be denied;

-- defendant Bartolomei's motion for summary judgment [129] be granted to the extent that it seeks judgment on plaintiff's claims, but otherwise be denied;

-- the NFR defendants' motion for summary judgment [130] be granted; and

-- plaintiff's motion for leave to supplement the Amended Complaint [142] be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 26, 2018.  Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:  November 6, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge